THE FOLLOWING ORDER  
IS APPROVED AND ENTERED  
AS THE ORDER OF THIS COURT:

DATED: September 29, 2016



Beth E. Hanan  
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

John M. Reinhart,   Case No. 16-21042-beh

Debtor.   Chapter 13

**DECISION SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION**

The Trustee has objected to confirmation of Mr. Reinhart's Chapter 13 plan, asserting that the plan fails to pay all of Mr. Reinhart's disposable income under 11 U.S.C. section 1325(b). Specifically, the Trustee asserts that Mr. Reinhart's calculation of his current monthly income ("CMI") should have included reimbursements from his employer for mileage and meals, but not the corresponding expenses which prompted the reimbursements. Had only the reimbursement amounts been included, the debtor's CMI would have yielded an above-median income status on Form 122C-1 of the means test, and consequently a 60-month plan commitment period. 11 U.S.C. § 1325(b)(4).

Mr. Reinhart works as a salesman for Vita Healthcare Corp. Midwest. As part of his duties, he takes customers out for business meals and uses his personal vehicle for work travel. Mr. Reinhart's employer reimburses him at 47 cents per mile, and reimburses him for meals after he supplies receipts. Mr. Reinhart has proposed a 46-month plan that pays in a total of $13,450. The plan provides for a claim secured by the debtor's vehicle, the costs of administration, and a 1% dividend to general unsecured creditors.

When calculating his current monthly income on Form 122C-1, Mr. Reinhart listed on line 2 his gross wages, salary, tips, bonuses, overtime, and commissions, before payroll deductions, in the amount of $5,559.47. Although he is not self-employed, on line 5 he listed net income from operating a business, profession, or farm in the amount of $0—an amount representing $1,022.28 in reimbursement receipts from his employer reduced by the same amount for work-related mileage and food expenses. The result is that Mr. Reinhart's CMI as shown on Line 14 is $5,559.47. That amount, when annualized on Line 15b, is below the median family income for a household of three and requires a three-year plan commitment period.[1] Similarly, on Line 8(a) of his Schedule I, he entered $0 for net income from operating a business.

The Trustee argues that reimbursements are income, and also that it is inappropriate to net a reimbursement against its corresponding expense when calculating a debtor's CMI. Consequently, the Trustee asserts that Mr.

---

[1] The debtor claims himself and two dependents on his schedule J.

Reinhart's actual current monthly income is $6,581.75 ($5,559.47 + $1,022.28), which when annualized is above the median family income for a household of three and requires him to propose a plan with a five-year term.[2] When the Trustee objects to confirmation of Chapter 13 plan, the court may not confirm the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

The issue for the court is how, if at all, employment-related reimbursements are factored into the debtor's current monthly income.[3]

The analysis begins by consulting the text of the Code. Where the language of the statute is clear, the court's function is to enforce the statute according to its terms unless the disposition required by its terms is absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).

Section 101(10A) of the Bankruptcy Code defines current monthly income as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income," that is derived during the 6-month period before commencement of the case. 11

---

[2] The Trustee's brief asserts that "the CMI calculation by the Debtor does not include the reimbursements received during the CMI period." In fact, Debtor's Form 122C-1 reports the reimbursement amounts as gross receipts on Line 5, and then includes underlying expenses in the same amount, yielding a "net monthly income from a business, profession or farm" of $0. CM-ECF Doc. No. 1, at 41.

[3] The Trustee also disputes whether Mr. Reinhart receives exact dollar for dollar reimbursements for meals, but such a determination requires evidence, which is beyond the scope of this decision.

U.S.C. § 101(10A)(A). CMI includes any amount paid by any entity other than the debtor on a regular basis for the household expenses of the debtor or the debtor's dependents. CMI expressly excludes benefits under the Social Security Act, payments to victims of war crimes or crimes against humanity, and payment to victims of international or domestic terrorism.
11 U.S.C. § 101(10A)(B). Section 1325(b)(2) of the Code defines "disposable income" as "current monthly income" less "amounts reasonably necessary to be expended" by a debtor.

Two things are immediately apparent from these texts—CMI necessarily is determined before disposable income is determined, and the Code envisions deduction for expenses once: in the disposable income calculation, but not in the CMI calculation.

The parties do not cite and the court could not identify case law directly on point, where the debtor is not self-employed but seeks to include employer reimbursement income netted against required employment-related expenses as part of his CMI calculation. Consequently, the court draws guidance from cases addressing the netting question for self-employed debtors.

A majority of courts considering this analogous question have concluded that when a self-employed Chapter 13 debtor calculates his CMI, he must include his gross business receipts but may not include the ordinary and necessary operating expenses arising from that self-employment. *See, e.g., In re Hoffman*, 511 B.R. 128 (Bankr. D. Minn. 2014) (if a Ch. 13 debtor is engaged in a business, the debtor's CMI is income without regard to business expenses,

while disposable income is income with regard to business expenses); *In re Harkins*, 491 B.R. 518, 522 (Bankr. S.D. Ohio 2013) (same); *Drummond v. Wiegand,* 386 B.R. 238, 239 (B.A.P. 9th Cir. 2008) (same); *In re Sharp,*394 B.R. 207, 216 (Bankr. C.D. Ill. 2008) (finding section 1325(b)(2)(B) clear that business expenses are deductions from CMI, and not part of the calculation of what CMI is); *In re Bembenek,* No. 08-22607, 2008 WL 2704289, at *2 (Bankr. E.D. Wis. July 2, 2008) (a debtor engaged in business should deduct her business expense on Form 22C under the "Other Expenses" category when calculating her disposable income, and not "above the line" for CMI).

Those same courts acknowledge a disconnect between the Code text and some of the information required by Official Form 122C-1.[4] Code section 101(10A)(A) requires "income from all sources" for the CMI calculation without reference to a deduction for expenses, while Line 5 of the Form seeks a net amount of gross business receipts minus operating expenses. *See, e.g.*, *Hoffman*, 511 B.R. at 136–37 ("when the Code and the Official Forms conflict, the Code controls); *In re Harkins*, 491 B.R. at 522 (statute does not permit inclusion of business expenses in calculating CMI, "despite what the means tests forms say"); *In re Bembenek,* 2008 WL 2704289, at *3 ("Form B22C should be changed"); *In re Harman,* 435 B.R. 596, 599 (B.A.P. 8th Cir. 2010) ("it is ultimately the statute, not the form which determines the applicable

---

[4] As of December 1, 2015, the Judicial Conference of the United States changed some of the official bankruptcy forms. The new Form 122C-1, which Mr. Reinhart completed as part of his petition, was previously denominated Form 22C, and many of the cases cited in this decision refer to the prior version of the means test form.

commitment period"). Federal Rule of Bankruptcy 9009 provides that "the forms shall be construed to be consistent with these rules and the Code." In short, the Code, and not the Form, is controlling.

The Trustee's brief cites several Chapter 7 cases considering abuse when the debtor failed to include mileage and meal reimbursements as part of his or her CMI. *See, e.g., In re Hornung*, 425 B.R. 242 (Bankr. M.D.N.C. 2010); *In re Gourley*, 549 B.R. 210 (Bankr. N.D. Iowa 2016); *In re Price*, No. 14-13186, 2015 Bankr. LEXIS 996 (Bankr. D. Md. Mar. 30, 2015). While those cases are distinguishable in that they address Chapter 7 debtors, they are similar in that the debtors were not self-employed but rather employees who received some employment-related expense reimbursement. Those courts held that the reimbursements should be disclosed as income, but did not consider whether the corresponding expense should be netted as part of the CMI calculation.

Resting on the plain language and lack of relevant exclusion in section 101(10A)(A), the court is persuaded that employer-paid reimbursements are income that must be included in the CMI calculation. *See, e.g., Blausey v. United States Tr.,* 552 F.3d 1124, 1132 (9th Cir. 2009) (unless a source of income is specifically excluded from the CMI calculation, Congress meant for it to be included). Mr. Reinhart's Form 122C-1, which nets the employment-related expenses, improperly excludes his reimbursement income.

Mr. Reinhart's arguments do not change this conclusion. His brief asserts that the Trustee confuses reimbursement with disposable income, and urges the court to take guidance from *In re Tinsley*, 428 B.R. 689 (Bankr. W.D.

Va. 2010). Doing so, he says, the court should permit Reinhart to claim his employment-related expenses at the same time he reports his employment-related reimbursement income for his CMI calculation. But *Tinsley* does not squarely address the question of whether the Code permits a debtor to offset employment-related reimbursement income against their underlying expenses when determining CMI.

The *Tinsley* court accepted that employer reimbursements are income for purposes of current monthly income, citing section 101(10A)(A). 428 B.R. at 692. *Tinsley* also looked to a pre-BAPCPA case, *In re Martin* 189 B.R. 619 (Bankr. E.D. Va. 1995), which concluded that the debtor should have included his mileage reimbursements in his disposable income calculation, and to *Hornung*, a Chapter 7 bad faith case where the debtors failed to include meal and fuel reimbursements, among other things, on their Schedule I. Finally, after discussing what evidence would be considered to document Mr. Tinsley's employment-related expenses on Schedule J, the court concluded by finding that "debtors must list reimbursements received from Pepsi as income on their Schedule I . . . ."

The *Tinsley* court otherwise did not distinguish current monthly income from disposable income, and *Martin* and *Hornung* do not aid the analysis of whether the Code permits employer-related expenses to be deducted from CMI. The *Tinsley* discussion, while concerning an employed debtor, not a (self-employed) debtor engaged in business, does not overcome the weight of cases like *Hoffman, Harkins, Wiegand* and *Bembenek,* which all conclude that

business expenses are deducted *from* CMI, and not earlier when calculating CMI.

Mr. Reinhart also tries to analogize his reimbursement-net of-expenses reporting on Form 122C-1 to the employment benefit in *In re Perez*, No. 15-31645, 2016 WL 3230662 (Bankr. E.D. Wis. June 3, 2016). There, Ms. Perez received use of a demo car from her employer. The court held that Ms. Perez could not use the value of her personal use of the demo car to pay her creditors, so that value need not to be included in the CMI calculation. *Id.* at *3.

The analogy does not fit here because Mr. Reinhart receives cash. Whether or not his reimbursements exactly match his employment-related expenses affects the secondary calculation of disposable income and is a matter for Form 122C-2 and Schedules I and J. More importantly, the *Perez* court was not faced with the question of whether a cash reimbursement must be included as part of "income from all sources" in the primary CMI calculation, but cited *Bembenek* as having answered that question. *Perez*, 2016 WL 3230662, at *2.

Mr. Reinhart also asserts that the reimbursements should not be considered income because the IRS does not require him to pay taxes on either the meal or mileage component of the funds. *See* 26 U.S.C. § 62(a)(2)(A) (the Tax Code expressly excludes reimbursements from adjusted gross income). But IRS treatment is not determinative. *Weigand*, 386 B.R. at 242 (explaining that the phrase "without regard to whether such income is taxable" in section

101(10A)(A) means that Congress intended to render concepts of what constitutes taxable income inapplicable to the currently monthly income calculation); *see also Perez*, 2016 WL 3230662, at *1 (noting that the Internal Revenue Code is not dispositive of the issue). While the court recognizes that taxable income and adjusted gross income are discrete concepts under the Tax Code, the Bankruptcy Code does not incorporate either characterization in its definition of current monthly income. 11 U.S.C. § 101(10A)(A).

Certainly there is a distinction between how the Code permits debtors engaged in business to deduct business operating expenses for purposes of the disposable income calculation, and how it treats others, including employed debtors, who seek to deduct employment-related expenses. A debtor engaged in business may reduce the calculation of his disposable income in part by subtracting "the payment of expenditures necessary for the continuation, preservation, and operation of such business" from CMI. 11 U.S.C. § 1325(b)(2)(B). Conversely, above-median debtors not engaged in business calculate expenses to reduce disposable income by reference to section 707(b)(2). 11 U.S.C. § 1325(b)(2) & (3).

Subsection 707(b)(2)(A) requires, with few exceptions, that a debtor's expenses shall be his or her applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expense for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service. 11 U.S.C. § 707(b)(2)(A)(ii). Those Standards have a Miscellaneous category which includes "occupational

expenses." In addition, the Other Necessary Expenses category includes expenses "necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income." *See In re Kuwik*, 511 B.R. 696, 704–705 (Bankr. N.D. Ga. 2014), and *Harkins*, 491 B.R. at 532–35, for fuller discussions of IRS Standards and its Handbook description of expense categories. The *Kuwik* court concluded that the scope of Other Necessary Expenses is broad enough to include business expenses because they are necessary for the production of income, 511 B.R. at 705, while recognizing that some courts may include them in the Special Circumstances category, *id.* at 705 n.13. While there is not always a direct matchup between the Code provisions and the bankruptcy forms, *see, e.g., Hoffman*, 511 B.R. at 136–37 (noting conflicts between Code and official forms), Line 30 of the current Form 122C-2 provides for additional food expenses and Line 43 is available for special circumstances.

The differences in Code treatment of expenses do not compel a conclusion that an employed debtor like Mr. Reinhart should be able to reduce his CMI calculation by netting it against his employment-related expenses. Instead, reading these provisions together, a debtor with employment-related expenses can account for them in his disposable income calculation.

The *Perez* court recognized that "the ultimate function of CMI is to determine to what degree a debtor is able to make payments to creditors." *Perez*, 2016 WL 3230662, at *3. Degree of ability to pay has both temporal and quantitative components. Here, by requiring Reinhart to include the $1022 in

monthly reimbursement income in his CMI calculation, he will commit to a 60-month plan. That is not an absurd result, nor does it prevent Mr. Reinhart from using Form 122C-2 and amending his Schedules I and J to reflect both the employment-related mileage and meal expenses he incurs, as well as the reimbursement income. *See* 11 U.S.C. § 707(b)(2); *see also Kuwik*, 511 B.R. at 703–06 (noting that debtors are not asked to pay their CMI into a plan, but only their disposable income . . . no economic reality is frustrated by having a debtor fund a plan for five years instead of three").

In sum, the trustee's objection is sustained as a matter of law. Employment-related reimbursement income, but not any corresponding employment-related expense, should be included in the current monthly income calculation. The parties should advise the court if a status conference is needed to set an evidentiary hearing to determine the substantiated amount of Mr. Reinhart's employment-related expenditures for purposes of including them on Schedule J and calculating disposable income.

**It is so ordered.**

# # # # #